# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| SAVE OUR CABINETS, EARTHWORKS, and CLARK FORK COALITION,<br>       Plaintiffs,<br>  vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, U.S. FOREST SERVICE, and CHRISTOPHER S. SAVAGE,<br>       Defendants,<br>  and<br><br>MONTANORE MINERALS CORP.,<br>       Defendant-Intervenor.<br><br>LIBBY PLACER MINING COMPANY,<br>       Plaintiff,<br>  vs.<br><br>UNITED STATES FOREST SERVICE, U.S. DEPARTMENT OF AGRICULTURE, and CHRISTOPHER S. SAVAGE,<br>       Defendants,<br>  and<br><br>MONTANORE MINERALS CORP.,<br>       Defendant-Intervenor. | CV 16-53-M-DWM<br>CV 16-56-M-DWM<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION TO VACATE THE CHALLENGED AGENCY ACTIONS AND FOR ENTRY OF JUDGMENT |

Pursuant to Fed. R. Civ. Pro. 58 and the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2), Plaintiffs Save Our Cabinets, et al. ("SOC")(in 16-53-M-DWM) and Plaintiff Libby Placer Mining Co. ("Libby Placer") (in 16-56-M-DWM) submit this Memorandum in Support of their Joint Motion To Vacate the Challenged Agency Actions found by this Court to be unlawful, and For Entry of Judgment.

In the Opinion and Order dated May 30, 2017 (Dkt. # 69), this Court found that the U.S. Forest Service's Record of Decision ("ROD") and Joint Final Environmental Impact Statement ("JFEIS") for the Montanore Mine violated numerous federal laws, including the Clean Water Act ("CWA"), National Forest Management Act ("NFMA"), the Organic Act of 1897, and the National Environmental Policy Act ("NEPA").  In granting Plaintiffs' motions for summary judgment in part, this Court further found that the Forest Service's actions and decisions in issuing the ROD and JFEIS were "arbitrary and capricious" under the APA.  This Court concluded that:

> The Forest Service acted arbitrarily and capriciously in approving the Project despite noncompliance with Montana nondegradation standards in violation of the Clean Water Act, the Organic Act, and NFMA. The Forest Service also violated NEPA when it did not consider mitigation measures for Poorman Creek.

Order at 64.

As a result of these findings, this Court ordered that: "The matter is remanded for further review consistent with this opinion." Id. This Court has not yet issued a Judgment, pursuant to FRCP 58, nor vacated/set aside the agency actions held to be unlawful and arbitrary and capricious. Plaintiffs thus request that this Court vacate the ROD and JFEIS and issue a Judgment accordingly. In their Complaints, Plaintiffs requested, in addition to an order declaring that the ROD and JFEIS violated these laws, that this Court "set aside and vacate" the ROD and JFEIS. *See* SOC's First Amended Complaint (Dkt. 11 in 16-53-M-DWM) at 53; Libby Placer's Complaint (Dkt. 1 in 16-56-M-DWM) at 29. Neither Federal Defendants nor defendant-intervenor Montanore Minerals Corp. ("MMC") offered argument opposing vacatur during summary judgment proceedings in this case.

In a similar situation involving the Rock Creek Mine, this Court, after issuing an Order ruling upon cross-motions for summary judgment, and finding violations of the Organic Act and NEPA in the Forest Service's ROD and Final EIS for that mine, issued a separate Judgment that stated:

> The Forest Service's decision to approve the Rock Creek Mine Project is vacated, and the 2003 Record of Decision and 2001 Final Environmental Impact Statement are set aside and remanded to the Forest Service for further action consistent with the Court's Opinion.

Rock Creek Alliance v. U.S. Forest Service, Judgment in a Civil Case (May 5, 2010)(attached).  Plaintiffs request that this Court issue a similar Judgment in this case.

## I.     THIS COURT SHOULD VACATE THE ROD AND JFEIS

This Court should vacate the ROD and JFEIS held unlawful and remanded in the Court's May 30, 2017 Opinion and Order.  Vacatur of unlawful agency action is the presumptive disposition under the APA, which directs that a "reviewing court *shall* . . . hold unlawful and *set aside* agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added).  The Supreme Court has explained that if an agency's decision "is not sustainable on the administrative record made, then the [agency's] decision *must be vacated* and the matter remanded to [the agency] for further consideration." Camp v. Pitts, 411 U.S. 138, 143 (1973) (emphasis added) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943)); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413–14 (1971) ("[i]*n all cases* agency action *must be set aside* if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" (quoting 5 U.S.C. § 706(2)(A) (emphasis added)).  Vacatur of unlawful agency action "normally accompanies a remand." Alsea Valley Alliance v. Dep't of Commerce, 358 F.3d 1181, 1185 (9th Cir. 2004).

Because vacatur is the presumptive, statutory remedy under the APA, any departure from that presumptive remedy would be a form of equitable relief to the agency that has acted unlawfully. *See* Curtis v. Loether, 415 U.S. 189, 194–97 (1974) (distinguishing "legal rights and remedies" created by statute from "equitable relief"). The burden thus is on the defendant agency to show why "equity demands" anything less than vacatur of the unlawful agency action. *See* Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1139 (9th Cir. 2006) (a party asserting an equitable defense "must show" that it satisfies all elements of the defense); *see also* Ctr. for Envtl. Health v. Vilsack, No. 15-cv-01690-JSC, 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("given that vacatur is the presumptive remedy for a procedural violation such as this, it is Defendants' burden to show that vacatur is unwarranted").

The Ninth Circuit has authorized remand *without* vacatur only in "limited" or "rare" circumstances, and only when the agency opposing vacatur can show that "equity demands" a departure from the presumptive APA remedy. Or. Natural Desert Ass'n v. Jewell ("ONDA v. Jewell"), 840 F.3d 562, 575 (9th Cir. 2016); Cal. Cmtys. Against Toxics v. EPA, 688 F.3d 989, 992, 994 (9th Cir. 2012) (per curiam); Humane Soc'y of U.S. v. Locke, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("In rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without

5

vacating the agency's action.").

No such "rare circumstances" exist in this case, as neither the agency nor MMC can meet their burden to show that "equity demands" that the unlawful ROD and JFEIS should remain in place upon remand. This Court found that the Forest Service violated non-degradation water quality standards enacted to protect numerous streams within the Cabinet Mountains Wilderness Area that will be significantly dewatered by operations approved in the ROD as well as the "high quality" waters just outside (e.g., Poorman Creek). In doing so, the ROD violated the CWA and the Organic Act. Order at 24 ("Approval of the Project despite the violation of Montana's water quality standards is arbitrary and capricious.").

Regarding the NFMA, this Court held that the ROD's authorization of the Mine's dewatering violated provisions of the Inland Native Fish Strategy and the Desired Conditions and Objectives of the Forest Plan. "The Forest Service's conclusion that the Project complies with NFMA is arbitrary and capricious given its unsupported 'neutrality' finding with respect to FW-DC-WTR-02 and its conclusion that the Project complies with the Inland Native Fish Strategy despite retarding certain objectives." Order at 38.

Regarding NEPA, this Court found that the failure to have any mitigation for the significant loss of flows in Poorman Creek caused by the groundwater pumping at the tailings facility violated NEPA. "The failure to consider mitigation in

6

relation to the pumpback well system and baseflow reductions in Poorman Creek was arbitrary and capricious." Order at 60.

These are the types of "serious errors" by an agency that warrant against allowing the decisions to stand during remand. Courts should review the "seriousness of the agency's errors" and "the disruptive consequences of an interim change that may itself be changed" to determine if the case presents the "rare circumstance" where vacatur of the illegal decision should not occur. *See* Pollinator Stewardship Council v. EPA, 806 F.3d 520, 532 (9th Cir. 2015); Cal. Cmtys., 688 F.3d at 992.

In addition to these serious errors, vacating the ROD and JFEIS will not result in the type of "disruptive consequences" that would require that the ROD and JFEIS remain in place. Here, the Forest Service purposefully authorized all phases of the Project in one ROD, despite the Montana DEQ's refusal to do so in light of the predicted violations of the State's non-degradation water quality standards. As the ROD was held to be arbitrary and capricious, the Forest Service will have to revise it accordingly, and issue a new ROD that complies with federal and state law. There is nothing inequitable about requiring the Forest Service to issue a new ROD. In addition, leaving the current ROD and JFEIS in place presents the public, MMC, and the agencies, with uncertainty about the status of further public and agency review of a Project that is predicted to violate various

federal laws and has been held to be illegal.

In the environmental context, the "rare circumstance" supporting non-vacatur occurs when leaving the illegal agency actions in place will *prevent* serious environmental harm – the opposite of the situation here. In Idaho Farm Bureau Federation v. Babbitt, the Ninth Circuit declined to vacate a rule that had listed the Bruneau Hot Springs Snail as an endangered species, despite affirming the district court's holding that the U.S. Fish and Wildlife Service had committed procedural error in making its listing decision. 58 F.3d 1392, 1401–05 (9th Cir. 1995). The court was concerned about "the potential extinction of an animal species." Id. at 1405. Taking into account that the purpose of the Endangered Species Act is to protect imperiled species, the court concluded that those "concerns weigh toward leaving the listing rule in place while [the Service] remedies its procedural error." Id. at 1406. *See also* Klamath Siskiyou Wildlands Ctr. v. Grantham, 642 Fed.Appx 742, 745 (9th Cir. 2016) (finding "one of those 'rare circumstances'" that warranted leaving a decision in effect while agency completed a new NEPA analysis where vacatur of the challenged decision to issue grazing permits would result in reinstating prior permits containing "terms less protective of Forest resources" (quoting Humane Soc'y, 626 F.3d at 1053 n.7)).

By contrast, the Ninth Circuit routinely vacates unlawful agency action that would cause adverse environmental harm, as is the case here. *See, e.g.*, Great Basin

Res. Watch v. BLM, 844 F.3d 1095, 1111-12 (9th Cir. 2016) (vacating ROD for a mine upon finding NEPA analysis unlawful); Pollinator Stewardship Council, 806 F.3d at 532–33 (vacating agency's approval of new agricultural insecticides); CBD v. BLM, 698 F.3d 1101, 1128 (9th Cir. 2012) (vacating decision authorizing a gas pipeline upon finding NEPA and ESA violations); Metcalf v. Daley, 214 F.3d 1135, 1146 (9th Cir. 2000) (setting aside decision due to NEPA violations); Friends of Pinto Creek v. EPA, 504 F.3d 1007, 1016–17 (9th Cir. 2007) (vacating Clean Water Act permit and remanding to agency where NEPA analysis failed to adequately consider and discuss mining discharges of copper into a creek); Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768, 788 (9th Cir. 2006) (vacating extensions of geothermal leases and decision approving a geothermal plant upon finding NEPA violations).

## II. THIS COURT SHOULD ENTER FINAL JUDGMENT

In addition, this Court should order entry of a final judgment pursuant to Fed. Rule Civ. Pro. 58. Rule 58(a) provides that, except in circumstances that are not relevant here, "[e]very judgment … must be set out in a separate document." Fed. R. Civ. P. 58(a). Accordingly, "a judgment is rendered only when it is set forth in writing on a separate, discrete document and entered on the docket." 11 Charles A. Wright, et al., Federal Practice & Procedure § 2785 (3d ed. 2017). Even where a court issues a summary judgment ruling pursuant to Federal Rule of

Civil Procedure 56, there is no final judgment unless a separate judgment document is entered on the Court's docket. Id.; *see* United States v. Lummi Indian Tribe, 235 F.3d 443, 448-49 (9th Cir. 2000) (holding that district court's "summary judgment order was not final because no separate judgment was entered").

This Court's Order disposed of all issues in this case and left nothing for the Court to address except entry of judgment. As noted above, that was exactly what this Court did in Rock Creek Alliance. Accordingly, Plaintiffs' request that this Court "set aside and vacate" the challenged and unlawful ROD and JFEIS and issue final Judgment under Rule 58.

Respectfully submitted this 7th day of June, 2017.

*/s/ David K.W. Wilson, Jr.*
David K.W. Wilson, Jr.
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, MT 59624-0557
406-442-3261 Phone
406-443-7294 Fax
kwilson@mswdlaw.com

*Attorney for Plaintiff Libby Placer Mining Co.*

*/s/ Roger Flynn*
Roger Flynn (Colo. Bar # 21078), *Pro Hac Vice*
Jeffrey C. Parsons (Colo. Bar. # 30210), *Pro Hac Vice*
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738, Fax (303) 823-5732

wmap@igc.org

*/s/ Kristine M. Akland*
Kristine M. Akland
AKLAND LAW FIRM PLLC
P.O. BOX 7274, 317 E. Spruce St.
Missoula, MT 59807
Phone and Fax (406) 544-9863
aklandlawfirm@gmail.com

*Attorneys for Plaintiffs Save Our Cabinets, et al.*

## CERTIFICATE OF SERVICE

I certify that the forgoing was served upon all parties this 7th day of June, 2017, by filing it with this Court's electronic filing system.

*/s/ Roger Flynn*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I hereby certify that the foregoing brief contains 1,990 words, as determined by the word count function of Microsoft Word.

*/s/ Roger Flynn*